UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
                                        :
DENISE ESPINOZA,                        :
                         Plaintiff,     :
                                        :     23cv9133 (DLC)
             -v-                        :
                                        :     OPINION AND
CGJC HOLDINGS LLC d/b/a JOE AND PAT'S    :        ORDER
PIZZERIA AND RESTAURANT, GENNARO        :
PAPPALARDO, CASEY PAPPALARDO, and JOHN  :
PISCOPO,                                :
                                        :
                         Defendants.    :
                                        :
--------------------------------------- X

APPEARANCES:

For plaintiff:
Megan S. Goddard
Siobhan Klassen
Goddard Law PLLC
39 Broadway, Ste 1540
New York, NY 10006

For defendants:
Richard Diorio
George Sitaras
Sitaras & Associates
200 Liberty St, 27th Fl
New York, NY 10281

DENISE COTE, District Judge:

    Following the termination of her employment, plaintiff

Denise Espinoza brought this action against her former employer

and its co-owners, principally alleging employment

discrimination and retaliation.  The defendants have moved to

dismiss the plaintiff's First Amended Complaint ("FAC").  For

the following reasons, two of the claims are dismissed.

**Background**

The following facts are taken from the FAC and documents integral to it.  They are assumed to be true for the purposes of this motion.

Espinoza describes herself as a Latinx, LGBTQ, Spanish-speaking woman with a disability.  She worked for approximately one year, from September 2019 to her firing in October 2020, as a phone server at Joe and Pat's Pizzeria and Restaurant in Manhattan ("Restaurant"), which is owned by defendant CGJC Holdings LLC.  She was 19 years old when hired.  Her responsibilities included taking mobile orders, entering orders into the computer system, and communicating orders with the kitchen.  When she began her employment with the defendants, Espinoza's immediate supervisor was defendant Casey Pappalardo ("Casey"), who owned the business along with defendant Gennaro Pappalardo ("Gennaro"), defendant John Piscopo ("Piscopo"), and Ciro Pappalardo ("Ciro").[1]

The Restaurant provided alcoholic beverages to all employees at its annual Christmas party.  The security camera for the Restaurant recorded Espinoza and a coworker going outside and kissing.  The owners teased them about the incident, which the owners saw on the security camera footage.  The co-

---

[1] Ciro Pappalardo is deceased.

owners referred to the coworker as "the man" and referred to the pair as "the lovebirds."

The FAC describes racial epithets used by Gennaro. The FAC quotes the terms used in these epithets and the other language which the FAC describes as discriminatory and objectionable. The first incident it describes occurred in March 2020, when Gennaro expressed that he was tired of working with non-English speakers. Also in March, Gennaro made anti-Asian comments while referring to the Covid-19 pandemic. In April 2020, Gennaro used a racial slur when referring to a Hispanic delivery driver. The SAC further alleges that Piscopo and Gennaro regularly made homophobic and sexist jokes and comments.

In May 2020, Espinoza told Ciro that she suffered from irritable bowel syndrome ("IBS"), explaining that she needed to use the restroom frequently. The owners, particularly Ciro, mocked Espinoza for having IBS.

Beginning in July 2020, the bartender at the Restaurant, who was also one of Espinoza's supervisors, began to use sexist slurs in addressing Espinoza. He also used degrading, sexist language when referring to female customers.

Espinoza complained to Ciro on June 26, about Gennaro using a slur to refer to Hispanics. Ciro told Espinoza that he would talk to Gennaro about it, but Gennaro's behavior and use of

racial and homophobic slurs continued.  On July 24, Espinoza texted Piscopo to report the bartender's behavior, stating that the bartender had been verbally abusive, unprofessional, and disrespectful toward her.  On July 26, Piscopo spoke with Espinoza at work and told her that the bartender's behavior was just "teasing" that "goes both ways."

On October 22, Espinoza posted on her Instagram story, "if you thinking about coming to eat at my job, dont bc my manager told me he's voting for trump don't give racists your money !!!!"  Two hours after Espinoza's post, Casey called her and told her to remove the post, stating, "You should probably take that down if you want to keep your job."  Espinoza responded by referring to the racist and sexually derogatory comments made by Ciro and Gennaro.  Casey called the comments made by the other owners "irrelevant."  Espinoza removed the post after the telephone call and texted Casey a long list of comments made by the other owners and told him she had not said anything to anyone about this for fear of losing her job.  Espinoza also texted Piscopo and Casey that the bartender's sexual harassment had not stopped.

Piscopo accidentally texted a group chat with himself, Casey, and Espinoza in it, stating, "I think she is falling back on what happened with [the bartender] because of what she

posted.  She never came back and told me anything else about"
the bartender.  Piscopo then texted Espinoza that if the
bartender was still harassing her, she should have told him.

On October 23, Piscopo called Espinoza.  He told her she
was "young and naïve" and stated that "girls [her] age don't
know any better."  Later that day, Casey called Espinoza and
fired her.

Espinoza filed a charge of discrimination with the Equal
Employment Opportunity Commission ("EEOC") on August 4, 2021
alleging gender, sexual orientation, race, and disability
discrimination and retaliation.[2]  On August 31, 2023, the EEOC
issued Espinoza a notice of the Right to Sue.

Espinoza filed the original complaint in this action on
October 17, 2023.  The defendants moved to dismiss the complaint
on February 29, 2024.  An Order of March 4th set a deadline for
filing any amended complaint and provided that it was unlikely
that the plaintiff would have a further opportunity to amend.
Espinoza filed an amended complaint ("FAC") on March 22, 2024,
bringing federal discrimination and retaliation claims against

---

[2] Plaintiff's claims were filed within 300 days of the
termination of her employment.  Because a hostile work
environment claim is timely if any "act contributing to the
hostile environment occurs within the filing period," and
Espinoza alleges the harassment continued until her termination,
each of her claims is timely.  King v. Aramark Services, Inc.,
96 F.4th 546, 560 (2d Cir 2024) (citation omitted).

the Restaurant and state and city discrimination and retaliation claims against all defendants, as well as a wrongful termination claim against the Restaurant.  Defendants renewed their motion to dismiss and it was fully submitted on June 14.

## Discussion

The FAC alleges that the defendants created a hostile work environment based on race, gender, and sexual orientation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §200e et seq. ("Title VII"), 42 U.S.C. § 1981 ("§ 1981"), the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code §8-101 et seq. ("NYCHRL").  It alleges as well that the defendants discriminated against Espinoza on the basis of her disability in violation of Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), the NYSHRL, and NYCHRL.  It next asserts that the defendants retaliated against Espinoza for protected activity in violation of Title VII, § 1981, the NYSHRL, and the NYCHRL.[3]  It further alleges that Gennaro, Casey, and Piscopo aided and abetted discrimination and retaliation in violation of the NYSHRL and NYCHRL.  Finally, the FAC asserts

---

[3] Espinoza brings her federal claims against the Restaurant and her state and city discrimination and retaliation claims against all defendants.

that the Restaurant wrongfully terminated Espinoza because of her legal recreation activities in violation of New York Labor Law ("NYLL") § 201-d(2)(c).

Defendants argue that the FAC has failed to state a claim under any of the relevant standards and that Espinoza's employment was terminated for a lawful reason.  As explained below, the defendants' motion is granted as to plaintiff's claims for retaliation under § 1981 and for wrongful termination under NYLL § 201-d(2)(c).  It is otherwise denied.

A complaint survives a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6) if "the facts, taken as true and with all reasonable inferences drawn in the plaintiff's favor, state a plausible claim to relief."  Sharikov v. Philips Medical Systems MR, Inc., 103 F.4th 159, 166 (2d Cir. 2024) (citation omitted). While the truth of the "well-pleaded factual allegations" in the complaint must be assumed, this obligation is "inapplicable to legal conclusions, such as threadbare recitals of the elements of a cause of action that are supported by mere conclusory statements."  Id. (citing Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 n.3 (2007)).

A.   Federal Hostile Work Environment Claims

The FAC alleges that Espinoza was subjected to a hostile work environment based on her race, gender, sex, and disability in violation of Title VII, § 1981, and the ADA.  Defendants argue that Espinoza has failed to plead facts demonstrating either that the hostility was "severe and pervasive" or that defendants acted with discriminatory intent.  Their arguments fail.

Title VII prohibits an employer from discriminating in "compensation, terms, conditions, or privileges of employment . . . because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  It also prohibits discrimination on the basis of an individual's sexual orientation or gender identity.  Bostock v. Clayton County, 590 U.S. 644, 652 (2020).  Section 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment," on the basis of race.  Williams v. New York City Housing Authority, 61 F.4th 55, 70 (2d Cir. 2023) (citation omitted).  Under the ADA, a covered employer "shall not discriminate against a qualified individual on the basis of disability in regard to terms, conditions, and privileges of employment."  Fox

v. Costco Wholesale Corporation, 918 F.3d 65, 74 (2d Cir 2019).[4]
Title VII, § 1981, and the ADA have been interpreted to provide
a cause of action for employment discrimination based on a
hostile work environment.  See Littlejohn v. City of New York,
795 F.3d 297, 320 (2d Cir 2015); Fox, 918 F.3d at 74.

      To state a hostile work environment claim under Title VII,
§ 1981, or the ADA, a plaintiff must plead facts that would tend
to show that "the workplace is permeated with discriminatory
intimidation, ridicule and insult that is sufficiently severe or
pervasive to alter the conditions of the victim's employment and
create an abusive working environment."  Littlejohn, 795 F.3d at
320-21 (citation omitted).  The plaintiff must also allege that
the harassing conduct was because of the plaintiff's protected
characteristic.  See, e.g., Moll v. Telesector Resourses Group,
Inc., 94 F.4th 218, 228 (2d Cir 2024).  This standard has

      both objective and subjective elements.  The
      misconduct shown must have been severe or pervasive
      enough to create an objectively hostile or abusive
      work environment, that is, an environment that a
      reasonable person would find hostile or abusive.  And

_____

[4] An employer is subject to the ADA if it has 15 or more
employees for each working day in each of 20 or more calendar
weeks.  42 U.S.C. § 12111(5)(A).  The ADA defines disability as
"a physical or mental impairment that substantially limits one
or more major life activities."  42 U.S.C. § 12102(1)(A).
"[F]unctions of the . . . bowel" constitute a "major life
activity" within the meaning of the statute.  42 U.S.C. §
12102(2)(B).

the victim must have subjectively perceived the
environment to be abusive.

Id. at 228-229 (citation omitted).  The complaint must plead
facts sufficient to show either that a "single incident was
extraordinarily severe, or that a series of incidents were
sufficiently continuous and concerted to have altered the
conditions of her working environment."  Alfano v. Costello, 294
F.3d 365, 374 (2d Cir. 2002) (citation omitted).  To satisfy the
latter requirement, the incidents complained of "must be more
than episodic; they must be sufficiently continuous and
concerted in order to be deemed pervasive."  Littlejohn, 795
F.3d at 321 (citation omitted).  Because "the analysis of
severity and pervasiveness looks to the totality of the
circumstances, the crucial inquiry focuses on the nature of the
workplace environment as a whole."  Moll, 94 F.4th at 229
(citation omitted).  Moreover, "a plaintiff who herself
experiences discriminatory harassment need not be the target of
other instances of hostility in order for those incidents to
support her claim."  Id. (citation omitted).   At the pleading
stage, the requirement that the harassment be "because of" the
employee's protected characteristic means that plaintiff "need
only allege that she suffered a hostile work environment because
of her [protected characteristic], not that all of the offensive

conduct was <u>specifically</u> aimed at her." <u>Patane v. Clark</u>, 508
F.3d 106, 114 (2d Cir. 2007).

Espinoza has alleged facts sufficient to support a hostile
work environment based on race, gender, sexual orientation, and
disability.  Regarding gender, allegations that "overtly sexual
or sexist comments, sexual innuendos, and gender-based
disparagements were regularly directed at women . . . or made
about women in general," along with allegations that "most
managers did nothing to discourage that objectionable conduct --
and that some managers participated in such conduct," are
sufficient to support a hostile work environment claim.  <u>Moll</u>,
94 F.4th at 234.  Here, the FAC details a barrage of such
comments, directed both at Espinoza and at customers by owners
as well as the bartender who was one of Espinoza's supervisors.
"[T]o avoid dismissal under FRCP 12(b)(6), a plaintiff need only
plead facts sufficient to support the conclusion that she was
faced with harassment of such quality or quantity that a
reasonable employee would find the conditions of her employment
altered for the worse." <u>Patane v. Clark</u>, 508 F.3d 106, 113 (2d
Cir. 2007) (citation omitted).  Espinoza has done so here.

As for race and her § 1981 claim, the FAC alleges that
Gennaro repeatedly made racist comments about multiple
ethnicities, including Espinoza's own; that he used a racist

slur to refer to a Latinx delivery driver in Espinoza's
presence; and that he complained to Espinoza about employees
speaking Spanish and stated that the Restaurant should not hire
people who speak Spanish.  Repeated use of slurs may alter the
conditions of employment and create an abusive working
environment.  See Rivera v. Rochester Genesee Regional Transp.
Authority, 743 F.3d 11, 21 (2d Cir 2014); see also Whidbee v.
Garzarelli Food Specialties, 223 F.3d 62, 70-71 (2d Cir. 2000)
(hostile work environment claim survived summary judgment where
plaintiff alleged "a stream of racially offensive comments over
the span of two to three months").  Indeed, "perhaps no single
act can more quickly alter the conditions of employment and
create an abusive working environment than the use of an
unambiguously racial epithet . . . by a supervisor in the
presence of his subordinates."  Rivera, 743 F.3d at 24 (citation
omitted).

        Finally, Espinoza alleges that she was discriminated
against because of her IBS, which she asserts is a disability
protected by the ADA.  She identifies the owners' mocking of her
disability as a violation of her rights under the ADA.  The FAC
adequately states a claim for hostile work environment under the
ADA.  It alleges that the Restaurant has more than 15 employees
and that Espinoza's IBS imposed a substantial limitation on one

or more of her life activities.  It further alleges that the
owners frequently mocked Espinoza for her disability in front of
other employees and that Ciro's "constant insults" about her
disability made Espinoza uncomfortable and hesitant to use the
bathroom at work.  These facts sufficiently allege both the
subjective and objective components of a hostile work
environment claim.

Defendants argue that the FAC does not plausibly allege a
hostile work environment "given her admission that she was
terminated on the basis of her disparaging Instagram Story
post."  This argument misses the mark.  The hostile work
environment claims seek damages for the defendants' wrongful
conduct during the months of employment, not for the termination
of employment.  In opposition to this motion to dismiss, the
plaintiff abandons any discrimination claim based on a separate
adverse action.

B.    State and City Hostile Work Environment Claims

Espinoza has also brought hostile work environment claims
against all defendants under the New York State Human Rights Law
("NYSHRL"), N.Y. Exec. Law §§ 290 et seq., and the New York City

Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-502(a) et seq.[5]  The motion to dismiss these claims is also denied.

Hostile work environment claims brought under the NYSHRL must be "construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed."  N.Y. Exec. Law. § 300.  The standard of liability under the NYSHRL will thus be treated as akin to the standard under the NYCHRL.  Under the latter statute, a plaintiff alleging a hostile work environment need only show that the employer treated her "less well than other employees, at least in part for a discriminatory reason."  Williams, 61 F.4th at 69 (citation omitted).  The severity and pervasiveness of the conduct are "relevant only to the issue of damages."  Id. (citation omitted).

Because Espinoza has stated a claim for hostile work environment on the basis of race, sex, and gender based on federal law, "it follows that she has done the same under the

---

[5] The individual defendants are liable under NYCHRL and NYSHRL because they are alleged to be supervisors who actually participated in the conduct giving rise to the discrimination. See, e.g., Russell v. New York University, --- N.Y.3d ---, 2024 WL 1773218, at *5 (N.Y. Apr. 25, 2024); Mahoney v. City of Albany, 181 N.Y.S.3d 716, 722 (N.Y. App. Div. 2022).

NYCHRL's more lenient standard," as well as the NYSHRL's now-identical standard.  Id. at 76.

As for her state and city claims for hostile work environment based on disability, the NYSHRL defines "disability" as a physical impairment "which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques."  N.Y. Exec. Law § 292(21).  The NYCHRL defines "disability" as "[a]n impairment of any system of the body; including . . . the digestive" system. N.Y. Admin. Code § 8-102.[6]  As stated supra, a plaintiff alleging a hostile work environment in violation of these statutes need only show that the employer treated her "less well than other employees, at least in part for a discriminatory reason." Williams, 61 F.4th at 69 (citation omitted).  The plaintiff also bears the burden of pleading that the conduct complained of is "caused by a discriminatory motive."  Mihalik v. Credit Agricole Cheuvreux N. AM., Inc., 715 F.3d 102, 110 (2d Cir. 2013). Plaintiff has done so here.

The FAC alleges that Espinoza has irritable bowel disease, which "is a physical impairment and thus a disability under the"

---

[6] The NYCHRL and NYSHRL define "disability" more broadly than does the ADA.  Under these statutes, a plaintiff need not show that her disability substantially limits a major life activity. See Giordano v. City of New York, 274 F.3d 740, 754 (2d Cir. 2001).

NYCHRL.  <u>Gordon v. Consolidated Edison Inc.</u>, 140 N.Y.S.3d 512,
516 (N.Y. App. Div. 2021).  Espinoza also alleged that she was
qualified and able to perform her job duties with the reasonable
accommodation of more frequent bathroom breaks, as required by
the NYSHRL.  <u>See</u> <u>Jacobsen v. New York City Health and Hospitals</u>
<u>Corp.</u>, 22 N.Y.3d. 824, 834 (2014).  The FAC further alleges that
after Espinoza told one of the owners about her condition, all
of the owners "frequently openly mocked plaintiff for her
disability in front of other employers".  These allegations
constitute "more than petty slights and trivial inconveniences,"
and thus adequately state a claim for relief.  <u>Williams</u>, 61
F.4th at 69.

Thus, defendants' motion is denied as to Espinoza's claims
for hostile work environment based on race, gender, disability,
and sexual orientation under federal, state, and city laws.

C.   Retaliation Claims

In her retaliation claims, Espinoza principally alleges
that that the defendants terminated her employment in
retaliation for her complaints to Piscopo and Casey in her
October 22 text that she was sexually harassed by the bartender,
in violation of Title VII, the NYSHRL, and the NYCHRL.[7]

_____

[7] In its retaliation claims, the FAC asserts as well that the
creation of a hostile work environment was a retaliatory act,
and that the retaliation was based as well on complaints of race

Defendants argue Espinoza has not sufficiently alleged that she engaged in a protected activity or that there was a causal connection between any protected activity and the termination of her employment.  They are incorrect.

Retaliation claims brought under the NYSHRL are subject to the same standards as retaliation claims under Title VII, which "prohibits an employer from discriminating against an employee because the employee has engaged in protected activity." Banks v. General Motors, LLC, 81 F.4th 242, 275 (2d Cir. 2023).[8]  To establish a prima facie claim for retaliation, a plaintiff must show that

> (1) she engaged in protected activity, (2) the defendant was aware of that activity, (3) she was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected activity and the materially adverse action or actions.

Carr v. New York City Transit Authority, 76 F.4th 172, 180 (2d Cir. 2023).

---

discrimination.  The FAC does not adequately plead such claims and the plaintiff appears in her opposition to the motion to dismiss to have abandoned these formulations of her retaliation claims.

[8] For retaliation to be actionable under § 1981, however, the retaliation must have been in response to the plaintiff's "assertion of rights that were protected by § 1981." Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684, 693 (2d Cir. 1998). Therefore, a retaliation claim brought under § 1981 requires that the protected activity relate to discrimination based on race or alienage.

Protected activity includes "opposing an unlawful employment practice" or otherwise "making a charge" in any manner "in an investigation, proceeding, or hearing." Banks, 81 F.4th at 275 (citing Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 62 (2006)). "[A]ny activity designed to resist or antagonize; to contend against; to confront; resist; or withstand discrimination" constitutes a "protected oppositional activity." Littlejohn, 795 F.3d at 317 (citing Crawford v. Metropolitan Gov't, 555 U.S. 271, 276 (2009)). "[W]hen an employee communicates to her employer a belief that the employer has engaged in a form of employment discrimination, that communication virtually always constitutes the employee's opposition to that activity." Id. (citation omitted). Under the NYCHRL, "opposing any practice" can "include situations where a person, before the retaliatory conduct occurred, merely made clear her disapproval of the defendant's discrimination by communicating to him, in substance, that she thought his treatment of the victim was wrong." Mihalik, 715 F.3d at 112 (citation omitted).

To show a causal connection, a plaintiff must plead facts supporting an inference that the protected activity was a but-for cause of the adverse action. See Banks, 81 F.4th at 275. There can be more than one "but-for" cause of an adverse action;

18

the but-for test is a "sweeping standard" and "[o]ften, events have multiple but-for causes."  Bostock, 590 U.S. at 656. Causation may be shown "either through direct evidence of retaliatory animus or indirectly, by showing that the protected activity was followed closely by discriminatory treatment." Sharikov, 103 F.4th at 170 (citation omitted).

The FAC adequately pleads that Espinoza engaged in protected activity when she complained in her text to two of the owners that the bartender had sexually harassed her.  It has also adequately pleaded a sufficient causal connection between that complaint and the termination of her employment.  She was fired shortly after she made her complaint.

Defendants argue that the FAC instead shows that Espinoza's employment was terminated because of her Instagram post.  As the Supreme Court noted in Bostock, however, a defendant "cannot avoid liability just by citing some other factor that contributed to its challenged employment decision.  So long as the plaintiff's [protected activity] was one but-for cause of that decision, that is enough to trigger the law."  590 U.S. at 656 (citation omitted).  Determining whether Espinoza was terminated at least in part due to her complaints to Casey and Piscopo is a fact-bound question inappropriate for resolution on a motion to dismiss.  Defendants' motion is therefore denied as

19

to plaintiff's retaliation claims insofar as they are based on protected activity concerning gender.

D.   Aiding and Abetting

Espinoza has also brought claims against Gennaro, Casey, and Piscopo for aiding and abetting discrimination and retaliation under the NYSHRL and the NYCHRL.  New York Executive Law § 296(6) makes it "an unlawful discriminatory practice [under state law] for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."  New York City Administrative Code § 8-107(6) prohibits the same conduct under City law.  When "evaluating aiding and abetting claims under the NYSHRL, the same standards apply to claims under the NYCHRL because the language of the two laws is virtually identical." Williams, 61 F.4th at 76-77 (citation omitted).  Individuals, however, cannot be held liable for aiding and abetting their own violations of NYSHRL or NYCHRL.  Perez v. Y & M Transportation Corporation, 196 N.Y.S.3d 145, 147 (N.Y. App. Div. 2023).

The motion to dismiss each of these claims is denied.  To the extent the plaintiff pursues at trial an aiding and abetting claim against one of the individual defendants for the violation of her rights by either the Restaurant or one of the other owners of the Restaurant, she may be permitted to do so.  The

20

FAC provides adequate notice of her intent to pursue such a theory.

E.   Wrongful termination New York Labor Law 201-d(2)(c)

Finally, the FAC alleges that Espinoza was wrongfully terminated in violation of NYLL § 201-d(2)(c), which makes it unlawful for any employer to "discharge from employment or otherwise discriminate against an individual . . . because of . . . an individual's legal recreational activities . . . outside work hours, off of the employer's premises and without use of the employer's equipment or other property."  Id.  The statute defines "recreational activities" as "any lawful, leisure-time activity, for which the employee receives no compensation and which is generally engaged in for recreational purposes, including but not limited to sports, games, hobbies, exercise, reading and the viewing of television, movies and similar material."  NYLL § 201-d(1)(b).

Even assuming posting to Instagram is a "recreational activity" under the NYLL, "the complaint alleges that the plaintiff was discharged, not for the activity of [posting to Instagram], but for the content of the [] post."  Sander v. Westchester Reform Temple, 210 N.Y.S.3d 506, 507 (N.Y. App. Div 2024).  Thus, defendants' motion is granted as to Espinoza's claim for wrongful termination under § 201-d(2)(c).

21

## Conclusion

The defendants' April 26, 2024 motion to dismiss is granted in part.  The plaintiff's claims for wrongful termination under the NYLL and for retaliation in violation of § 1981 are dismissed.

Dated:     New York, New York
           July 23, 2024

                                    _____
                                    DENISE COTE
                                    United States District Judge

22