```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------- X
                                          :
DENISE ESPINOZA,                          :
                    Plaintiff,            :
                                          :      23cv9133 (DLC)
          -v-                             :
                                          :      OPINION AND
CGJC HOLDINGS LLC d/b/a JOE AND PAT'S     :         ORDER
PIZZERIA AND RESTAURANT, GENNARO          :
PAPPALARDO, CASEY PAPPALARDO, and JOHN    :
PISCOPO,                                  :
                                          :
                    Defendants.           :
                                          :
----------------------------------------- X
```

APPEARANCES:

For plaintiff:
Megan S. Goddard
Siobhan Klassen
Goddard Law PLLC
39 Broadway, Suite 1540
New York, NY 10006

For defendants:
Richard Diorio
George Sitaras
Sitaras & Associates
200 Liberty St, 27th Floor
New York, NY 10281

DENISE COTE, District Judge:

Following the termination of her employment, plaintiff Denise Espinoza sued her former employer, CGJC Holdings LLC ("CGJC Holdings"), and several of its co-owners, Casey Pappalardo ("Casey"), Gennaro Pappalardo ("Gennaro"), and John Piscopo ("Piscopo") (collectively, "defendants"). Espinoza principally alleges employment discrimination and retaliation.

In their amended answer, defendants assert three counterclaims against Espinoza. For the following reasons, Espinoza's motion to dismiss each of the counterclaims is granted.

## Background

The following facts are taken from the pleadings. They are assumed to be true for the purposes of this motion.

Espinoza worked for approximately one year as a phone server at Joe and Pat's Pizzeria and Restaurant in Manhattan ("Restaurant"), which is owned by CGJC Holdings. The individual defendants in this action -- Casey, Gennaro, and Piscopo -- are all co-owners and managers of the Restaurant.

Defendants allege that they chose to terminate Espinoza's employment at the Restaurant after Espinoza posted the following statement as a "story" on her Instagram social media page on October 22, 2020 (the "October 2020 Post"):

> [I]f you thinking about coming to eat at my job, dont [because] my manager told me he's voting for trump dont give racists your money !!!

Defendants further allege that the October 2020 Post was publicly available to "thousands" of people, that the Restaurant was the "only employer" Espinoza identified in her public profile at the time, and that it was "widely known" that the individual defendants were owners or managers of the Restaurant.

2

Defendants assert that they "requested that Espinoza take down" the October 2020 Post. After she "failed or refused to do so," they terminated her employment.

Espinoza initiated this action on October 17, 2023. An Opinion of July 23, 2024 granted in part defendants' April 26, 2024 motion to dismiss Espinoza's first amended complaint. See Espinoza v. CGJC Holdings LLC, No. 23cv9133 (DLC), 2024 WL 3520662, at *1 (S.D.N.Y. July 23, 2024). Espinoza's claims for a hostile work environment based on her race, gender, sexual orientation and disability, and for retaliatory termination of her employment survive. Espinoza's claim of retaliation is premised on her assertion that she was fired due to her complaints to Piscopo and Casey that the bartender had sexually harassed her. Discovery is ongoing.

On August 6, the defendants filed an answer with counterclaims. Espinoza filed a motion to dismiss the counterclaims and the defendants filed amended counterclaims. They assert counterclaims against Espinoza for common law defamation, tortious interference with business relations, and breach of fiduciary duty. Espinoza renewed her motion to dismiss and it became fully submitted on December 17.

**Discussion**

A motion to dismiss counterclaims under Rule 12(b)(6) is decided under the same standard applied to a motion to dismiss the claims of a complaint. To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a party "must plead enough facts to state a claim that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Vengalattore v. Cornell Univ., 36 F.4th 87, 102 (2d Cir. 2022) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

In determining if a counterclaim is sufficiently plausible to withstand dismissal, a court accepts the counterclaimant's factual allegations as true and draws all reasonable inferences in the non-movant's favor. See Havens v. James, 76 F.4th 103, 116 (2d Cir. 2023). A court need not, however, "credit 'a legal conclusion couched as a factual allegation' or a 'naked assertion devoid of further factual enhancement.'" Calcano v. Swarovski N. Am. Ltd., 36 F.4th 68, 75 (2d Cir. 2022) (quoting Iqbal, 556 U.S. 662). Rather, a court "refer[s] to a complaint's factual context to discern whether to accept a complaint's conclusory statements." Id. (citation omitted).

4

I.  Defamation

The first counterclaim asserts that Espinoza defamed the defendants in her October 2020 Post.  Under New York law, a complaint asserting defamation claims must plausibly allege five elements: "(1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability."  Palin v. N.Y. Times Co., 940 F.3d 804, 809 (2d Cir. 2019).  The first of these five elements is itself "composed of multiple parts: there must be (A) a writing, it must be (B) defamatory, it must be (C) factual -- that is, not opinion -- and it must be (D) about the [counterclaimant], not just a general statement."  Chau v. Lewis, 771 F.3d 118, 127 (2d Cir. 2014).

"Determining whether a statement is an allegation of fact or mere opinion is a legal question for the court."  Id. at 128.  New York courts have identified three factors to be considered in determining whether something is an expression of fact rather than opinion.  See id. at 128-29.  These are:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or

>listeners that what is being read or heard is likely
>to be opinion, not fact.

Brian v. Richardson, 87 N.Y.2d 46, 51 (1995) (citation omitted).

Even if a statement is found to contain opinion, "the court must next determine whether the statement is 'pure opinion' (and thus non-actionable) or 'mixed opinion' (and therefore actionable)." Chau, 771 F.3d at 129. Pure opinion is a "statement of opinion which is accompanied by a recitation of the facts upon which it is based or does not imply that it is based on undisclosed facts." Id. (citation omitted). Mixed opinion, in contrast, "is an opinion that does imply a basis in undisclosed facts, or facts known only to the author, and is actionable." Id.

The accusation in the October 2020 Post that the Trump voter is a racist is a statement of pure opinion. The October 2020 Post had two components. First, Espinoza made a factual claim that her manager told her he was voting for President Trump. Second, based on that factual claim, she asserted an opinion: that the manager was a racist. Because the statement of opinion discloses the facts on which it is based, it is not actionable. See Silverman v. Daily News, L.P., 11 N.Y.S.3d 674, 675–76 (2d Dep't 2015) (newspaper article questioning whether principal who had allegedly authored "racist writings" and had ties to a "white supremacist group" should be in charge of a

school with a large minority population not actionable as libel, in part because "there was full disclosure of the facts supporting the opinions"); Russell v. Davies, 948 N.Y.S.2d 394, 395-96 (2d Dep't 2012) (article detailing plaintiff's allegedly racist and anti-Semitic essay was non-actionable opinion where "there was full disclosure of the facts supporting the opinions").

The defendants assert that the "style, tone, and manner" of the October 2020 Post suggest that Espinoza "is in possession of additional, undisclosed facts supporting her characterization of all of the Defendants . . . as racists."  Nothing in the October 2020 Post implies a basis in "undisclosed facts, or facts known only to the author."  Chau, 771 F.3d at 129.  Accordingly, the reference to a racist in the October 2020 Post is non-actionable pure opinion.

The defendants further argue that declaring them to be "racists" is an actionable statement of fact, citing to La Liberte v. Reid, 966 F.3d 79 (2d Cir. 2020).  In that case, the defendant published a social media post juxtaposing a 1957 photograph of a white woman screaming at the Little Rock Nine with a photograph of the plaintiff with her mouth open facing a minority teenager at a city council meeting, and included the statement "[h]istory sometimes repeats."  Id. at 84.  Applying

7

California law, the Second Circuit held that a reasonable reader would understand that the plaintiff had screamed at the teenager, which he and the plaintiff denied had happened. Id. at 93. Because such an "accusation of concrete, wrongful conduct" could "be proved to be either true or false," it was actionable. Id. (citation omitted). The defendants here do not similarly allege that Espinoza accused them of having engaged in concrete, wrongful conduct that could be proved to be true or false. Instead, they allege that Espinoza accused them of "being a racist in some abstract sense," which is non-actionable opinion. Id. (citation omitted).[1] Accordingly, Espinoza's motion to dismiss defendants' defamation counterclaim is granted.[2]

---

[1] The defendants additionally cite Maraschiello v. City of Buffalo Police Dept., 709 F.3d 87 (2d Cir 2013), asserting that the Second Circuit there "discuss[ed] with approval" a district court's denial of a "motion to dismiss defamation claims based on comment that plaintiff was a racist." That is wrong in all respects. Adopting the report and recommendation of a Magistrate Judge, the district court granted summary judgment on all federal claims and then declined to exercise supplemental jurisdiction over the plaintiff's state law defamation claim. See id. at 91-92. On appeal, the plaintiff-appellant's brief contained "no discussion" of his defamation claim. Id. at 92.

[2] Espinoza moves to dismiss the defendants' defamation counterclaim on three additional grounds: that the October 2020 Post is not "of and concerning" the defendants; that the defendants have failed to allege "falsity" of the October 2020 Post; and that the defendants have failed to plead special damages or per se defamation. See Palin, 940 F.3d at 809. It is unnecessary to reach these arguments.

II. Defendants' Remaining Counterclaims

The defendants' second and third counterclaims are for tortious interference with business relations and breach of fiduciary duty, respectively.  These counterclaims are dismissed for failure to state a claim.

    A.   Tortious Interference With Business Relations

To state a claim for tortious interference with business relations under New York law, four elements must be pled: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." Catskill Dev., L.L.C. v. Park Place Ent. Corp., 547 F.3d 115, 132 (2d Cir. 2008).  The first element requires that a plaintiff allege interference with a specific third party.  See Kid Car NY, LLC v. Kidmoto Techs. LLC, 518 F. Supp. 3d 740, 762-63 (S.D.N.Y. 2021) (collecting cases).  And under the third element, "[w]rongful means include physical violence, fraud, misrepresentation, civil suits, criminal prosecutions and some degree of economic pressure." Lombard v. Booz-Allen & Hamilton, Inc., 280 F.3d 209, 214-15 (2d Cir. 2002).

The defendants' claim for tortious interference with business relations fails for two reasons.  First, defendants make only a "general allegation of interference with customers without any sufficiently particular allegation of interference with a specific contract or business relationship."  McGill v. Parker, 179 A.D.2d 98, 105 (1st Dep't 1992).  Second, defendants identify no wrongful or improper conduct by Espinoza aside from the October 2020 Post, which, as discussed, is a non-actionable statement of opinion.

Defendants argue that they do not need to identify interference with a specific contract or business relationship due to the unique nature of the restaurant business, citing SMJ Grp., Inc. v. 417 Lafayette Rest. LLC, No. 06cv1774 (GEL), 2006 WL 2516519 (S.D.N.Y. Aug. 30, 2006).  In SMJ, however, the defendants handed out leaflets with the plaintiffs' trademarked logo in front of the plaintiffs' restaurant while discouraging passing individuals from eating at the restaurant.  See id. at *7.  In contrast, the October 2020 Post did not include the Restaurant's name or image.  Moreover, the October 2020 Post was made to Espinoza's social media followers, not to potential customers outside the Restaurant.

As to wrongful means, the defendants contend that defamation may suffice.  See Espire Ads LLC v. TAPP Influencers

10

Corp., 655 F. Supp. 3d 223, 263 (S.D.N.Y. 2023).  Here, however, defendants' defamation claim fails as a matter of law.  Accordingly, Espinoza's motion to dismiss defendants' tortious interference with business relations claim is granted.

B.   Breach of Fiduciary Duty

"To state a breach of fiduciary duty claim under New York law, a plaintiff must plead: (i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom."  Spinelli v. Nat'l Football League, 903 F.3d 185, 207 (2d Cir. 2018) (citation omitted).  A fiduciary relationship exists "when one person is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation."  Id. (citation omitted).  "[E]mployment relationships, without more, do not create fiduciary relationships."  Pauwels v. Deloitte LLP, 83 F.4th 171, 184 (2d Cir. 2023) (citation omitted).[3]  Instead, a plaintiff must show "special circumstances" transforming the employment relationship into a fiduciary one.  Id. (citation omitted).  These may be present "where the party that relied on the relationship reposed confidence in the other party and

---

[3] Defendants' rely on cases that predate Pauwels, in particular on cases that cite to Louis Cap. Markets, L.P. v. REFCO Grp. Ltd., LLC, 801 N.Y.S.2d 490 (Sup. Ct. 2005).

11

reasonably relied on the other's superior expertise or knowledge." Id. (citation omitted).

Defendants allege that Espinoza's responsibilities and duties as a server included promoting the restaurant and engaging with customers, and that Espinoza breached these duties by publishing the October 2020 Post. These allegations merely recount Espinoza's status as an employee. Defendants have failed to allege any special circumstances creating a fiduciary relationship.[4]

### Conclusion

Espinoza's October 15 motion to dismiss is granted. The defendants' counterclaims are dismissed with prejudice.

Dated:   New York, New York
         February 11, 2025

_____
DENISE COTE
United States District Judge

---

[4] Defendants argue in opposition to this motion to dismiss their counterclaims that they have pleaded all of the requirements for a faithless servant claim under New York law. They did not, however, assert this counterclaim. In any event, that claim would also fail as a matter of law. Defendants plausibly allege only that Espinoza published the October 2020 Post, not that she engaged in the "persistent pattern of disloyalty" that courts have found necessary to bring conduct within the confines of the doctrine. Schwartz v. Leonard, 526 N.Y.S.2d 506, 508 (2d Dep't 1988); see also City of Binghamton v. Whalen, 32 N.Y.S.3d 727, 729 (2016).