UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
DENISE ESPINOZA,                                    Case No.: 1:23-cv-09133 (DLC)

                Plaintiff,

    -against-

JOE AND PAT'S PIZZERIA, GENNARO
PAPPALARDO, CIRO PAPPALARDO,
CASEY PAPPALARDO, and JOHN PISCOPO,

                Defendants,
-------------------------------------------------------------------X


**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF HER
MOTION FOR PARTIAL SUMMARY JUDGMENT**


                Respectfully submitted,

                GODDARD LAW PLLC
                *Attorneys for Plaintiff*

          By: /s/ Siobhan Klassen

                Megan S. Goddard, Esq.
                Siobhan Klassen, Esq.
                39 Broadway, Suite 1540
                New York, New York 10006
                Office: 646-964-1178
                Fax: 212-208-2914
                Megan@goddardlawnyc.com
                Siobhan@goddardlawnyc.com

**PRELIMINARY STATEMENT**

Plaintiff's partial motion for summary judgment should be granted because Defendants fail to submit any admissible facts that show there is a genuine dispute as to why Plaintiff was terminated—because she engaged in protected activity. Defendants spend the majority of their opposition trying to distract from their plain testimony, where they not only admit that Plaintiff engaged in complaints of racial discrimination, but that they terminated her employment because of it. Defendants introduce a mirage of red herrings to distract from the fact that they cannot deny the testimony of the Individual Defendants which plainly supports Plaintiff's retaliation claims. In further attempts to avoid the testimony, Defendants dwell on alternative reasons that may have also influenced their decision to terminate Plaintiff's employment, but the law is clear, retaliation does not have to be the only motive in the adverse action, it only needs to be the but-for cause or a motivating factor, which the irrefutable testimony shows it was.

**I.    *Defendants Were Aware of Plaintiff's Protected Activity***

Defendants incorrectly argue that Plaintiff needed to complain directly to her supervisors in order for her October 22, 2020, Instagram Post ("the Post") to be considered protected activity. However, the relevant laws require that to win on summary judgment, Plaintiff need only show that it is undisputed that "(1) he or she engaged in a protected activity as that term is defined under the NYCHRL, (2) his or her *employer was aware that he or she participated in such activity*, (3) his or her employer engaged in conduct which was reasonably likely to deter a person from engaging in that protected activity, and (4) there is a causal connection between the protected activity and the alleged retaliatory conduct." *Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 53 (2d Cir. 2025) (emphasis added.) There is no heightened requirement that Plaintiff needed to complain directly to her supervisors in order to be protected from retaliation under that law. If

1

Defendants' argument were to be upheld, then anytime an employer finds out that their employee was complaining about discrimination to other employees, the employee would not be protected by the anti-discrimination laws. Defendants admitted that they knew about Plaintiff's complaint in her Post, they also testified that they knew about Defendant Gennaro treating non-white people worse than white people and about Plaintiff's subsequent test messages complaining of discrimination, therefore easily showing Defendants were aware of Plaintiff's protected activity.

Defendants are also incorrect in their assertion that Plaintiff must have been complaining of racist employment practices directed towards her. Under the relevant law, "[t]o qualify as protected activity, there is no requirement a complaint identify a particular individual who was discriminated against or the particular policy they are challenging. Rather, all that is necessary is that the employee have a reasonable, good faith belief the employer is engaged in conduct prohibited by the anti-discrimination laws and then convey that belief to the employer in a manner that can reasonably be understood as such." *Trotter v. Nat'l Football League*, 737 F. Supp. 3d 172, 187–88 (S.D.N.Y. 2024). Again, Defendant Gennaro admitted Plaintiff complained he only "like white people" and that terminating her because she called Defendants racist in her Post was a "no brainer." 56.1 ¶ 4, 9. Plaintiff was not required to complain about discrimination against herself directly to her supervisors, she need only complain of conduct prohibited by anti-discrimination laws and that Defendants knew of the complaints, both of which were admitted to during depositions and therefore cannot be disputed.

Defendants' reliance on *Dodd v. My Sisters' Place, Inc.*, is misplaced. No. 21 CV 10987 (VB), 2024 WL 3028474, at *9 (S.D.N.Y. June 17, 2024). In *Dodd*, the pro se plaintiff failed to show any facts that supported that his engagement in protected activity led to his termination as he only argued temporal proximity and "cats paw" liability, that the supervisors who terminated

2

his employment were influenced by the discriminating employee. Here, cat's paw liability is not relevant as the discriminating employees were the owners who terminated Plaintiff's employment. The court in *Dodd* rejected the pro se plaintiff's temporal proximity argument as temporal proximity cannot be the only fact showing causation. Again, here, while there is temporal proximity between the protected activity—the Post, and the termination, that is hardly the most compelling fact. Defendant Gennaro and Defendant Piscopo both testified that Plaintiff's complaint, the Post calling Defendants racist, was the reason for terminating Plaintiff's employment. 56.1 ¶¶ 9-10. Therefore, there are no disputed facts that Plaintiff engaged in protected activity and was terminated for it.

## II.     *Defendant Casey's Contradictory Declaration Must be Disregarded*

Defendants introduce a self-serving declaration by Defendant Casey which completely contradicts his testimony and therefore should be disregarded for purposes of summary judgment. "'[I]t is well-settled in this Circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment.'" *Scoppettone v Mamma Lombardi's Pizzico, Inc*., 09-CV-440, 2011 WL 13130635, at *7 (EDNY Nov. 9, 2011), *affd sub nom*. *Scoppettone v Mamma Lombardi's Pizzico, Inc*., 523 Fed Appx 73 (2d Cir 2013)(internal citations omitted). There is no disputed fact that Plaintiff was fired on or after October 23—Defendant Casey specifically testified to that fact:

> Q: On Friday, October 23rd, [Plaintiff] texted you she was in the middle of a doctor's appointment but she was available to talk. Did you speak to her after that?
>
> A: I believe so, yes.
>
> Q: Do you remember what the content of that conversation was?

3

A: I believe that was the phone call where we –where I fired her." Dkt 90-3, Casey Tr. 46:22-47:6.

Defendant Casey's declaration that Plaintiff's employment was terminated on October 22, approximately 15 minutes before she complained of discrimination via text, completely contradicts his sworn statement during his deposition that she was terminated on October 23. *Id.*; Casey Decl.¶¶ 4-7. Defendants cannot use a declaration which completely contradicts Defendant Casey's testimony to create an issue of fact regarding when Defendants terminated Plaintiff and the declaration should be disregarded for purposes of summary judgment.

Even without the clear testimony about Defendants terminating Plaintiff's employment on October 23, the exhibit Defendants use to argue that Plaintiff complained after she was terminated itself shows that she was terminated after her text complaints because at the end of the text chain she wrote, "if you fire me because i [sic] vented on social medial, i [sic] don't know what to tell you." Casey Decl. Ex. A. This text message makes clear that she was referring to her termination as a hypothetic, future event about which she was concerned. The texts clearly support what Defendant Casey stated at his deposition, that he did not terminate her employment until at least October 23, because otherwise, she would have not been referring to her termination as a hypothetical, future action. The following text where Plaintiff states she is available for a call further supports that Defendants terminated her after her complaints of discrimination via text as nowhere in any deposition did anyone testify that a phone conversation happened after the one on which she was terminated. *Id*.

Defendants' reliance on Defendant Casey's declaration also misses the point—there are no disputed facts regarding why Plaintiff was terminated—because of her Post, which was protected activity. Plaintiff does not argue in her motion that she was terminated because of her text messages

4

sent after the Post.[1] The following text messages complaining of discrimination merely reinforce that Plaintiff's Post was protected activity. Plaintiff complained of racist behavior from Defendant Gennaro in her place of work, she then complained that her managers were "racist" in her Post and then complained again via text that her managers were engaging in racist behavior at work. Taken together, it is clear that calling her managers "racist" in her Post was a complaint of her employers "engag[ing] in conduct prohibited by the anti-discrimination laws" because she already had, and would again, made it clear she had complained about their racist behavior within the workplace. *Trotter*, 737 F. Supp. 3d 187–88.[2]

Similarly, Defendants' argument that Plaintiff has not shown pre-text is misplaced, as Plaintiff does not need to show pre-text if she can show that the stated reason for the termination was in retaliation for her engagement in protected activity, as multiple Defendants testified to.[3]

### III.   *There Is No Dispute that Plaintiff Complained of Racism*

Defendants' argument that a text message from Plaintiff referencing her fear of losing her job for complaining about certain discriminatory instances creates a disputed issue of fact regarding her complaint to Defendant Gennaro that he only liked white people is nonsensical and ignores the language of the texts. The texts do not reference Plaintiff's complaint that Defendant Gennaro only likes white people. Casey Decl. Ex. A. In the texts, Plaintiff states that the reason she did not complain about 1) Defendants saying racist comments about Asian individuals, 2) calling a GrubHub driving a "sp*c," and 3) commenting about women deserving to get raped, is

---

[1] Plaintiff reserves her right to make that argument if her retaliation claims proceed to trial but does not make it for purposes of summary judgment.
[2] For this same reason, Defendants' argument in Section C of their memorandum of law is unavailing because Plaintiff is not arguing that the texts sent after her Post were the basis for the retaliation, but only that they continue to show that her Post was protected activity.
[3] Defendants' argument regarding why Plaintiff made the post is also irrelevant because Plaintiff's motives for engaging in protected activity are not relevant to the assessment regarding if she, in fact, did engage in protected activity and if she was retaliated against for that engagement.

5

because she was scared of being terminated. Plaintiff does not say that she was fearful to complain about everything she experienced, only that she didn't complain of those specific discriminatory instances. In fact, Defendant Gennaro admits that Plaintiff did complain that he only likes white people.[4] Therefore, any statement regarding her not complaining about certain instances of discrimination does not create a dispute that she complained to Defendant Gennaro about only liking white people.

### IV. *There Is No Dispute Defendants Terminated Plaintiff for Her Protected Activity*

Defendants again misconstrue that applicable law regarding what is required to show a causal connection for retaliation claims. Plaintiff does not dispute that the Defendants testified that she was terminated, in part, because she attempted to discourage the public from eating at Joe & Pat's. However, having multiple reasons for terminating an employee is permitted under the retaliation laws as long as the protected activity was the "but for" cause under Title VII and the New York State Human Rights Law and that it was a "motivating factor" under the New York City Human Rights Law. *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 332–33 (S.D.N.Y. 2020); *Lee v. Riverbay Corp.*, 751 F. Supp. 3d 259, 284 (S.D.N.Y. 2024). Defendants cannot show disputed facts that Plaintiff's complaint of racism in her workplace on her Post was not the "but-for" cause or a "motivating factor" because at least two Defendants testified that it directly was. 56.1 9-10. It is not relevant if Defendants viewed the Post as protected activity, if it were, every employer could disregard any complaint of discrimination so long as they testified that they didn't view it as such. The undisputed facts show Plaintiff had previously complained of racism to

---

[4] Similar to FN 1, *supra*, the reasons why Plaintiff complained that Defendant Gennaro only liked white people are also immaterial, because she did make the complaint, in the workplace, and it supports that her later complaint of racism in her Post was protected activity.

Defendant Gennaro, and continued that complaint in her Post, and that was the "but for" reason for her termination.[5]

While attempting, and failing, to distinguish the present action from *Farmer* and *Lee*, Defendants again misstate the testimony and law. Defendants were aware of Plaintiff's complaint to Defendant Gennaro that he only liked white people, as he admitted it, and they were aware of the Post—even arguing that section of the Post regarding not giving money to Defendants was the reason they terminated Plaintiff's employment. Similar to *Farmers* and *Lee*, Defendants knew of the protected activity, despite their desperation to contort the clear testimony.

## CONCLUSION

Based on the above and Plaintiff's Memorandum of Law in Support of her Partial Motion for Summary Judgment, Plaintiff respectfully moves for the Court to find as a matter of law that Plaintiff was retaliated against by Defendants under Title VII, the New York State Human Rights Law, and the New York City Human Rights Law.

Dated: New York, New York
August 1, 2025

GODDARD LAW PLLC
*Attorneys for Plaintiff*

By: /s/ Siobhan Klassen
Megan S. Goddard, Esq.
Siobhan Klassen, Esq.
39 Broadway, Suite 1540
New York, New York 10006
Office: 646-964-1178
Fax: 212-208-2914
Megan@goddardlawnyc.com
Siobhan@goddardlawnyc.com

---

[5] It should be noted that Defendant Casey's self-serving declaration is unreliable as it states Plaintiff was terminated twenty minutes after Defendant Casey found out about the Post. However, Defendants argue that if they were terminating her because of her complaint that they were racist in her Post, they would have terminated her "on the spot," which they did not. Def. MOL p 17. If she was not terminated "on the spot," then she was not terminated in the way Defendant Casey describes in his declaration.