UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
                                         :
DENISE ESPINOZA,                         :
                                         :
                        Plaintiff,       :      23cv9133 (DLC)
                                         :
            -v-                          :      OPINION AND
                                         :      ORDER
CGJC HOLDINGS, LLC, et al.,              :
                                         :
                        Defendants.      :
                                         :
--------------------------------------- X

APPEARANCES:

For plaintiff Denise Espinoza:
Megan S. Goddard
Siobhan Klassen
Goddard Law PLLC
39 Broadway, Suite 1540
New York, NY 10006

For defendants CGJC HOLDINGS, LLC d/b/a Joe and Pat's Pizzeria
and Restaurant, Gennaro Pappalardo, Casey Pappalardo, and John
Piscopo:
Richard Diorio
George Sitaras
Sitaras & Associates
200 Liberty St, 27th Floor
New York, NY 10281


DENISE COTE, District Judge:

     Denise Espinoza initiated this action on October 17, 2023,

suing her former employer, CGJC Holdings LLC, which operates Joe

and Pat's Pizzeria and Restaurant ("Joe & Pat's"), and several

of the restaurant's co-owners, Casey Pappalardo ("Casey"),

Gennaro Pappalardo ("Gennaro"), and John Piscopo ("Piscopo")

(collectively, "defendants").  Espinoza moves for partial summary judgment on her claim that the defendants fired her in retaliation for her October 22, 2020 Instagram post.  For the following reasons, her motion is denied.

### Background

The following facts are taken from the parties' submissions and are undisputed unless otherwise noted.  Only those facts necessary to decide the present motion are stated.

Espinoza's First Amended Complaint alleges that she worked at Joe & Pat's for approximately one year, from September 2019 to her firing in October 2020.  Espinoza identifies three occasions during her time working for the defendants in which she complained of racist conduct.

First, at an unidentified time during Espinoza's employment, Espinoza and Gennaro had a dispute over Espinoza's choice of where to seat a group of customers that included some Indian individuals (the "Seating Dispute").  After Gennaro temporarily re-seated the party -- which he says he did because Espinoza had seated the group in a location that needed to be used for another party -- Espinoza accused Gennaro of separating the Indian customers from the white customers on purpose, of being a racist, and of only liking white people.

2

Second, on October 22, 2020, Espinoza posted on Instagram a picture of herself with the following statement:

> if you thinking about coming to eat at my job, dont bc my manager told me he's voting for trump[.]  dont give racists your money !!!!

(the "October 22 Post").  A screenshot of the October 22 Post shows a timestamp of October 22, 2020 at 10:34 p.m.  Defendants Piscopo, Gennaro and Casey each saw the October 22 Post. Espinoza later took down the October 22 Post.

Third, in a text message timestamped October 22, 2020 at 11:17 p.m., Espinoza sent defendant Casey the following:

> i told your dad a while ago that jerry called a grubhub driver a spic
> jerry has repeatedly said extremely racist things about Asian people
> i talked to shawn about this as well
> i dont bother saying anything because everyone just writes me off as this political bitch
> . . .
> i have not said anything to anyone about this because I don't want to lose my job.  the reality is that the managers have said really messed up things
> i have to hear comments like that every time i work and i have to maintain a smile on my face?
> casey i have been very respectful to you and have been consistent and reliable with my work.  i have stayed regardless of how your employees have harassed me, made me cry, and so forth.
> if you fire me because i vented on social media, i dont know what to tell you.

(the "October 22 Texts").  It is undisputed that Espinoza's use of "Jerry" refers to defendant Gennaro.  On October 30, Espinoza sent a text to Casey requesting that he send her an unemployment

letter with the details of her dismissal and to forward the photo of the Instagram story "that you received."

Gennaro, Piscopo, and Casey agree that Espinoza was fired because of the October 22 Post.  Gennaro stated that it was "a no-brainer" to terminate Espinoza's employment, because she "told our customers I'm a racist" and to "not eat there anymore."  He also testified that the ultimate decision to terminate Espinoza's employment was made by Casey.  Piscopo similarly explained that the October 22 Post was the reason Espinoza was fired and that his "opinion was given to Casey." Finally, Casey explained that "we decided to fire her based on the fact that she was telling people not to come dine at Joe & Pat's," and that the defendants' "main concern" was not the accusation that they or the manager identified in the October 22 Post were racists.

It is disputed precisely when after the October 22 Post the defendants fired Espinoza, and thus whether Espinoza sent the October 22 Texts before or after Casey fired her.  Casey stated in a deposition that he fired Espinoza over the phone, and that he "believe[d]" he did so on October 23, after Espinoza sent him a text saying "i was in the middle of a drs appointment[,] i'm available to talk."  As part of the briefing on this motion, he submitted a declaration in which he states that after Espinoza

made the October 22 Post around 10:45 p.m., Casey called
Espinoza to ask her to take down the October 22 Post, and after
"about 20 minutes," he "called her back to terminate her
employment."  It was after that, Casey states in his
declaration, that Espinoza sent the October 22 Texts.[1]

Espinoza initiated this action on October 17, 2023.  She
brings claims of employment discrimination and retaliation.  The
parties agree that Espinoza's claims for trial include those at
issue in this briefing for partial summary judgment[2],
specifically, claims of unlawful retaliation asserted under the
following federal, state, and local laws: Title VII of the Civil
Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), 42
U.S.C. § 1981, the New York State Human Rights Law ("NYSHRL"),
N.Y. Exec. Law § 290 et seq., and the New York City Human Rights

---

[1] Espinoza argues that Casey's declaration should be disregarded
for purposes of this motion.  The Court need not resolve this
issue because, as Espinoza admits, she "does not argue in her
motion that she was terminated because of her text messages."

[2] An Opinion of July 23, 2024 granted in part defendants' April
26, 2024 motion to dismiss Espinoza's First Amended Complaint
("FAC").  Espinoza v. CGJC Holdings LLC, No. 23cv9133 (DLC),
2024 WL 3520662, at *1 (S.D.N.Y. July 23, 2024) ("July 2024
Opinion").  The July 2024 Opinion denied the defendants' motion
to dismiss the FAC's claims of retaliation "insofar as they are
based on protected activity concerning gender," and dismissed
other claims of retaliation as inadequately pleaded and
abandoned.  Id. at *7.  Nevertheless, the parties agree in the
briefing on Espinoza's motion for partial summary judgment that
one of the issues for trial is whether Espinoza suffered
retaliation based on complaints of race discrimination.

Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL").  Espinoza
moved for partial summary judgment on these claims on June 27,
2025, arguing that there is no dispute of fact that she was
unlawfully fired in retaliation for the October 22 Post.  The
motion became fully submitted on August 1, 2025.

## Discussion

Summary judgment is appropriate when "the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R.
Civ. P. 56(a).  Material facts are those facts that "might
affect the outcome of the suit under the governing law."  Choi
v. Tower Rsch. Cap., LLC, 2 F.4th 10, 16 (2d Cir. 2021)
(citation omitted).  "[S]ummary judgment must be rejected if the
evidence is such that a reasonable jury could return a verdict
for the nonmoving party."  Indemn. Ins. Co. of N. Am. v.
Unitrans Int'l Corp., 98 F.4th 73, 77 (2d Cir. 2024) (citation
omitted).

The court's role in deciding a summary judgment motion "is
not to resolve disputed questions of fact but solely to
determine whether, as to any material fact, there is a genuine
issue to be tried."  Moll v. Telesector Res. Grp., Inc., 94
F.4th 218, 227 (2d Cir. 2024) (citation omitted).  The court
must "review the record taken as a whole," and "may not make

6

credibility determinations or weigh the evidence." Id.
(citation omitted).

I.   Legal Standard

To establish a retaliation claim under Title VII, a
plaintiff must show that "(1) she was engaged in protected
activity; (2) the employer was aware of that activity; (3) the
employee suffered a materially adverse action; and (4) there was
a causal connection between the protected activity and that
adverse action." Qorrolli v. Metro. Dental Assocs., 124 F.4th
115, 122 (2d Cir. 2024) (citation omitted).  Courts apply the
same principles to analyze retaliation claims asserted under
§ 1981.  Littlejohn v. City of New York, 795 F.3d 297, 315 (2d
Cir. 2015).

"The NYSHRL historically utilized the same standard as
Title VII, but it was amended in 2019 to align with the NYCHRL's
more liberal pleading standard." Edelman v. NYU Langone Health
Sys., 141 F.4th 28, 45 (2d Cir. 2025) (citation omitted).
Accordingly, under the NYSHRL and the NYCHRL, a plaintiff must
establish that:

> (1) he or she engaged in a protected activity as that
> term is defined under the [state or local law], (2)
> his or her employer was aware that he or she
> participated in such activity, (3) his or her employer
> engaged in conduct which was reasonably likely to
> deter a person from engaging in that protected
> activity, and (4) there is a causal connection between

the protected activity and the alleged retaliatory
conduct.

Id. at 53 (citation omitted).

A.  Protected Activity

Protected activity includes "opposing an unlawful
employment practice". Banks v. Gen. Motors, LLC, 81 F.4th 242,
275 (2d Cir. 2023). "[A]ny activity designed to resist or
antagonize; to contend against; to confront; resist; or
withstand discrimination" made unlawful by the relevant statute
constitutes a "protected oppositional activity." Littlejohn,
795 F.3d at 317 (citing Crawford v. Metropolitan Government of
Nashville & Davidson County, 555 U.S. 271, 276 (2009)).
Protected activity thus includes not only "complaints involving
discrimination against the complainant herself," but also
"complaints of discrimination on behalf of other employees and
complaints of discriminatory practices generally." Id.

To qualify as protected activity, "the plaintiff need not
prove that his underlying complaint of discrimination had merit,
but only that it was motivated by a good faith, reasonable
belief that the underlying employment practice was unlawful."
Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 24
(2d Cir. 2014) (citation omitted). "The reasonableness of the
plaintiff's belief is to be assessed in light of the totality of

the circumstances." Kelly v. Howard I. Shapiro & Assocs.

Consulting Eng'rs, P.C., 716 F.3d 10, 14–15 (2d Cir. 2013).

B.    Employer Knowledge and Causation

Implicit in all four statutes is the requirement that the

defendant was aware of the plaintiff's protected activity. See

Edelman, 141 F.at 46 & n.10. "[G]eneral corporate knowledge

that the plaintiff has engaged in a protected activity" is

sufficient. Id. at 46 n.10. The knowledge requirement requires

more, however, than establishing that the employer had general

awareness of the plaintiff's conduct; the employer must also

have "understood, or could reasonably have understood, that the

plaintiff's opposition was directed at conduct prohibited by"

the relevant statute. Kelly, 716 F.3d at 15.

Finally, the causation standards differ slightly across the

statutes. Under both Title VII and § 1981, a plaintiff must

establish that retaliation was the "but-for" reason for the

adverse employment action. Edelman, 141 F.4th at 51 (citation

omitted). There can be more than one "but-for" cause of an

adverse action, since the but-for test is a "sweeping standard"

and "[o]ften, events have multiple but-for causes." Bostock v.

Clayton County, 590 U.S. 644, 656 (2020). To "show causation

under the NYSHRL and NYCHRL," however, "a plaintiff need only

show that retaliatory animus was a motivating factor, that is,

that it played any role at all in the challenged conduct."
Edelman, 141 F.4th at 49 (citation omitted).

II.  Application

Espinoza moves for summary judgment on grounds that it is
undisputed that she engaged in protected activity when she
issued the October 22 Post and that the defendants terminated
her employment in retaliation for that post.  Her motion fails
since there are disputed issues of fact that a jury must
resolve.

A.  Protected Activity

One plausible reading of the October 22 Post is that the
plaintiff was complaining not of racial discrimination at her
place of employment prohibited by federal, state, or local law,
but rather only that her manager told her that he was voting for
President Trump.  That is a political choice that the plaintiff
may have deemed racist in the October 22 Post, but it is not on
its face an objection to an employment practice made unlawful by
any of the federal, state, or local laws pursuant to which
Espinoza brings her claims.  See Edelman, 141 F.4th at 46;
Kelly, 716 F.3d at 14-15.  The plaintiff bears the burden of
establishing that she reasonably believed her complaint was
directed at conduct "properly within the definition of an

unlawful employment practice." <u>Kelly</u>, 716 F.3d at 15 (citation omitted).

In their opposition, the defendants oppose Espinoza's motion on grounds that for a complaint to be protected activity, it must be made "directly to a manager or other agent of her employer." This is incorrect. It is sufficient that there is "general corporate knowledge that the plaintiff has engaged in protected activity." <u>Edelman</u>, 141 F.4th at 46 n.10 (citation omitted). All three individual defendants admitted to learning about the October 22 Post, and their knowledge may be imputed to the entity defendant. <u>Id.</u>

The defendants also contend that the October 22 Post is not protected activity because it is a "generalized complaint or accusation" that is not "about discrimination premised on a protected characteristic," and also because it is not protesting prohibited discrimination suffered by Espinoza. Protected activity, however, includes "complaints of discrimination on behalf of other employees and complaints of discriminatory practices generally." <u>Littlejohn</u>, 795 F.3d at 317.

B.   Employer Knowledge and Causation

There are also questions of fact as to whether the individual defendants "understood, or could reasonably have understood, that the plaintiff's opposition was directed at

11

conduct prohibited by" the federal, state, or local laws underlying her claims.  Kelly, 716 F.3d at 15.  Casey, for instance, testified that he understood the October 22 Post to mean that "we were racist because we were voting for Trump and not to come to the restaurant."  It remains an issue for trial whether the defendants knew or should have known that Espinoza's October 22 Post constituted opposition to an unlawful employment practice.

In addition, there exist questions of fact as to whether the defendants fired Espinoza because she engaged in protected activity.  Espinoza rests her argument in this respect on the defendants' admitting that the October 22 Post was the reason they fired her.  But the defendants did not admit that they fired her for engaging in protected activity.  A jury will have to decide, first, whether the October 22 Post amounted to protected activity; second, whether the defendants reasonably should have understood it as such; and, if those first two conditions are satisfied, whether a but-for or motivating reason for her firing was the October 22 Post's protected activity.  A jury could find that the sole reason the defendants fired Espinoza was that she had discouraged customers from eating at their restaurant.

## Conclusion

Espinoza's June 27, 2025 motion for partial summary judgment is denied.

Dated:     New York, New York
           August 22, 2025

                                    _____
                                    DENISE COTE
                         United States District Judge